UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at LONDON)

| | |
|---|---|
| LENNIE PERRY,<br><br>　　Plaintiff,<br><br>v.<br><br>WARDEN S. LOVETT, ET AL.,<br><br>　　Defendants. | Civil Action No. 6:24-CV-188-CHB<br><br>**MEMORANDUM OPINION<br>& ORDER** |

\*\*\*　\*\*\*　\*\*\*　\*\*\*

Federal inmate Lennie Perry filed a *pro se* complaint alleging that Warden S. Lovett, Assistant Warden of Operations M. Miller, Captain M. Briggs, and Health Service Administrator K. Donnelly were deliberately indifferent to his serious medical needs during his confinement at the United States Penitentiary—McCreary ("USP McCreary"). *See* [R. 1]; [R. 8]. The United States Attorney's Office for the Eastern District of Kentucky entered an appearance on behalf of the defendants and responded to Perry's complaint by filing a motion to dismiss or, in the alternative, for summary judgment. [R. 23]. Perry then filed a response in opposition to the defendants' motion, [R. 26], and the defendants filed a reply brief in support of their motion, [R. 27). Thus, the defendants' motion is now ripe for a decision from this Court. Because there is no genuine issue of fact indicating that any of the defendants acted with deliberate indifference, the defendants' motion will be granted.

1

I.

Perry was convicted of seven counts of sex trafficking in violation of 18 U.S.C. § 1591 and sentenced to a total of 480 months of imprisonment on July 31, 2024. *See United States v. Perry*, No. 1:18- cr-00703 (N.D. Ill., filed Oct. 17, 2018). Perry is currently confined at USP Terre Haute, but he was housed at USP McCreary (located in Pine Knot, Kentucky) from September 6, 2024, through March 18, 2025. Perry filed a complaint in this Court on December 23, 2024, alleging that officials at USP McCreary were deliberately indifferent to his serious medical needs.[1] [R. 1]. He seeks monetary damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as well as injunctive relief.

Perry alleges that he requires a CPAP machine to treat sleep apnea. According to Perry, he received his personal CPAP machine during the intake process at USP McCreary on September 6, 2024. However, Perry contends that an unidentified official took the CPAP machine away from him because he refused to go into the prison's general population. [R. 1-1, pp. 3–4]. On September 9, 2024, Perry wrote a "cop-out" to Warden S. Lovett advising him that he had not received his CPAP machine "for chronic care respiratory illness, to prevent heart attacks, strokes, hypertension, sleep deprivation, fatigue, and death . . . as it provides oxygen to my lungs and brain." *Id.* at 5. Perry does not indicate whether the Warden responded.

Carrie Cunnagin, D.O., a medical officer at USP McCreary, evaluated Perry on September 11, 2024. *See* [R. 23 at 1-1 (Cunnagin Declaration)]. Perry reported a history of obstructive sleep apnea with snoring and breathing interruptions. He advised Cunnagin that he last had a sleep

---

[1] Perry's other claims were dismissed upon screening under 28 U.S.C. §§ 1915(e)(2) and 1915A on March 24, 2025. *See* [R. 8].

study in 2017 but there was no mention of it in his medical records. Cunnagin submitted a request for a sleep study because it was not clear that Perry had a diagnosis that required the use of a CPAP machine. Nevertheless, Cunnagin approved Perry's use of his personal CPAP machine pending a new sleep study. [R. 23-1, p. 17]. On September 11, 2024, Nurse T. Smith delivered the CPAP machine to Perry. However, according to Perry, she did not bring an extension cord which he needed to power the machine. [R. 1-1, pp. 5, 7].

Perry alleges that a nurse (possibly named A. Lawson) ignored him when he asked about a power source for his CPAP machine two days later. *Id.* at 8. On September 18, 2024, Perry spoke to a counselor about his fear of dying in his sleep due to not using a CPAP machine. *Id.* at 9. That same day, Perry had "a word [with Captain Briggs] about [his] issues and complaints . . . mainly [his] CPAP machine." *Id.* at 10. According to Perry, Briggs walked away after advising Perry that he needed a battery. *Id.*

Perry alleges that he spoke to Warden Lovett about his CPAP machine on September 24, 2024. *Id.* at 12–13. Perry contends that the Warden stated that he was well aware of Perry's issues and that Perry needed to "speak to medical." *Id.* at 13. Perry told the Warden he had done so "many times to no avail," to which the Warden responded, "I don't know what to tell you." *Id.* Perry also alleges that, on October 1, 2024, he told Defendant Donnelly that he still needed an extension cord for his CPAP machine "to stay alive and not suffer greatly." *Id.* at 15–16. According to Perry, Donnelly responded, "I know, and bet you do. I need money." *Id.* at 16. On October 17, 2025, Perry spoke to Defendant Miller about his CPAP. *Id.* at 20. Perry says that Miller responded by stating that he did "not have any money" and was "waiting on Congress." *Id.*

3

Perry reports that he spoke to Miller again on October 21, 2025 and submitted a "cop out," but does not provide Miller's response. *Id.* at 21.

Perry alleges that he still had no power source for his CPAP machine as of December 2024. *Id.* at 27, 30. Cunnagin reports that Perry was offered a battery-powered CPAP on January 17, 2025, but he refused it because he wished to use his own machine. [R. 23-1, pp. 2, 21]. Perry maintains that he "was never offered a BOP issued CPAP machine. . . ." [R. 26, p. 2].

Perry was transferred to FCI Terre Haute on or about March 19, 2025.[2] [R. 20-1, p. 3]. Nurse Practitioner Casey Frank reports that Perry underwent a two-evening sleep study from April 30, 2025, to May 1, 2025, which indicated that he had mild obstructive sleep apnea. *Id.* at 3–4 (Frank Declaration). Frank also noted that Perry had lost a significant amount of weight. *Id.* at 3. On June 5, 2025, medical staff at USP Terre Haute concluded that Perry would not be issued a CPAP machine because he had previously misused medical supplies and because a CPAP is not medically required for a diagnosis of mild obstructive sleep apnea. *Id.* at 13.

## II.

Because the Court has considered the tendered declarations from BOP medical providers, the defendants' motion is properly considered as a request for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d). After all, the defendants' motion gave Perry sufficient notice of the arguments raised in favor of summary judgment and

---

[2] On April 22, 2025, Plaintiff signed an "Institution Issued BOP Auto-Adjust CPAP Memo of Acknowledgment" wherein he acknowledged receipt of 1 CPAP, cord, mask and bag. [R. 20-1, p. 42]. Perry was instructed to check out an extension cord from Central Medical Supply but there is no indication that he ever did so. *Id.* at 3, 9. Perry also continued to complain to prison officials that he did not have a CPAP. *Id.* When officials searched Perry's cell on June 5, 2025, they found an empty bag for a CPAP machine. *Id.* In a June 5th administrative note, medical staff noted that Perry had offered "a multitude of stories about what happened to the CPAP, none of which correlate with each other." *Id.* at 9.

Perry had ample opportunity to respond to the issues to be considered by the Court. *See Shelby Cnty. Health Care Corp. v. So. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In other words, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The defendants bear the initial burden of pointing out an absence of evidence needed to support Perry's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the defendants meet that burden, Perry then has the burden of coming forward with evidence raising a triable issue of fact. *See id.* To satisfy that burden, Perry may not rest of the allegations of his pleadings. Fed. R. Civ. P. 56(e); *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). Instead, he must present sufficient evidence to create a genuine issue of fact for trial. *Id.* "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252).

The fact that Perry is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has

5

progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### III.

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on a prisoner by acting with 'deliberate indifference'" to the prisoner's serious medical needs. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate a denial of medical care that violates the Eighth Amendment, a prisoner must establish an objective and a subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). The objective component requires the prisoner to "prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Id.* "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted).

The defendants contend that, even if Perry could show that he had an objectively serious medical need, the facts as alleged do not indicate that any of the defendants were deliberately indifferent. The Court agrees. With regard to the subjective component of deliberate indifference:

> the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference.

6

*Blackmore*, 390 F.3d at 895 (quoting *Farmer,* 511 U.S. at 837 and *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)) (internal quotations omitted).  Each defendant's potential liability must be assessed in light of his or her own conduct, as "damage claims . . . arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Begin with Warden Lovett.  Perry alleges that he wrote a cop-out to the Warden on September 9, 2024.  While Perry contends that he told the Warden he needed the CPAP machine "for chronic care respiratory illness, to prevent heart attacks, strokes, hypertension, sleep deprivation, fatigue, and death," there is nothing to suggest the Warden had any independent knowledge regarding Perry's medical needs.  Standing alone, particularly in the absence of any objective symptoms that Lovett could observe, Perry's subjective complaints do not constitute "facts from which the inference could be drawn that a substantial risk of serious harm exists."  *See Blackmore,* 390 F.3d at 895.  Moreover, when "a prisoner is under the care of medical experts . . . non-medical prison officials will generally be justified in believing that the prisoner is in capable hands."  *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004).

Perry's claims against the remaining defendants fare no better.  While Perry alleges that he told the defendants about his need for a power source for his CPAP, there are no allegations or evidence suggesting that the defendants had reason to believe that Perry faced a substantial risk of serious harm.  Perry does not allege that any of these defendants had independent knowledge of his medical needs or that they observed any signs of physical distress.  While Perry alleges that he

7

experienced snoring and breathing interruptions, he does not provide any details regarding the frequency or intensity of these symptoms. As alleged, these symptoms are common and would not alert the defendants that Perry was at risk of serious harm. *See Blaine v. Louisville Metro. Gov't.*, No. 18-5224, 768 F. App'x 515, 528 (6th Cir. Apr. 16, 2019) (registered nurse's failure to check on a snoring prisoner was, at most, an "'inadvertent failure to provide adequate medical care,' which is insufficient to rise to deliberate indifference").

Perry's response to the defendants' motion does not meaningfully address their argument that he fails to meet the standard for deliberate indifference. *See* [R. 26]. Rather, he contends that the defendants are "committing perjury" because he was never offered a BOP-issued CPAP machine. But regardless of whether Perry was offered an alternative CPAP machine, Perry does not allege sufficient facts to create a jury question on the issue of deliberate indifference against these defendants.

The Court also notes that, while Perry briefly mentions experiencing pain, *see* [R. 1-1, p. 13], his allegations are mainly focused on his alleged anxiety and fear of dying due to the lack of a functioning CPAP machine. The Prison Litigation Reform Act ("PLRA") states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA applies to Eighth Amendment claims for mental or emotional damages. *See Flannory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). While the physical injury necessary to sustain a claim is not significant, it must be more than *de minimis* for claims under the Eighth Amendment. *See id.; Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. July 7, 2005) (concluding that injuries such as swelling, pain, and cramps resulting from 12-

hour confinement in a "strip cage" are merely *de minimis* injuries for purposes of the PLRA). Since Perry has alleged no more than *de minimis* injuries, his claims are barred by 42 U.S.C. § 1997e(e).

Finally, Perry's claim for injunctive relief against officials at USP McCreary is rendered moot by his transfer to USP Terre Haute. *See Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Moreover, the defendants tendered evidence indicating that Perry's recent sleep study indicates that his sleep apnea does not require the use of a CPAP machine. *See* [R. 20-1, pp. 4, 9].

## IV.

Based on the foregoing analysis, it is **ORDERED** as follows:

1. The defendants' Motion to Dismiss or, in the Alternative for Summary Judgment, [**R. 23**], is **GRANTED**.

2. The Court will enter a corresponding Judgment.

This 2nd day of September, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY